This is a tort action in which plaintiff, Dave Richey, sues Douglas A. Swink and his alleged insurer, the Metropolitan Casualty Insurance Company, to recover damages sustained by him from injuries caused by one of Swink's trucks, in Lafayette Parish, on October 9, 1939.
The facts of the accident are undisputed save in one material respect, which will be hereinafter discussed.
The A. B. Pipe Supply Company, Inc., employed Swink to haul from the scene of the accident and thereabouts to Shreveport, Louisiana, some heavy used metal pipe. The earth had been removed from a line of this pipe and the sections thereof were assembled in piles for convenience in loading. At the locus of the accident five sections of pipe had been assembled. Each section was about thirty feet long and each weighed approximately one thousand pounds. Plaintiff and other employees of the A. B. Pipe 
Supply Company, Inc., assisted by Swink's driver and helper, loaded the pipe on a truck and trailer owned by Swink which had been stopped parallel to the pile of pipe. The loading was on this wise:
One end of a section of pipe was lifted up and laid on the trailer near its rear end and fastened. Then the crew would go to the other end of the pipe and lift it upon the truck's bed. Each section would be pushed as far as possible from the loading side so as to make room for other sections.
After the five sections had been loaded, the truck driver climbed into the cab, preparatory to driving forward to the next pile of pipe not far away. Plaintiff and some members of the loading crew were then together near to and on the left side of the truck. Plaintiff stepped forward close to the side of the truck, immediately in front of its rear dual wheels, to shove over the last loaded section of pipe. At this moment the truck started forward. The outside rear wheel caught plaintiff's right foot, shoved him down on his face and when the truck was stopped, the wheel rested squarely upon the small of his back. By reverse movement, it backed off of his body.
Plaintiff charges that, contrary to rule and custom, the driver of the truck, without signal or warning to or from him and without first ascertaining if it was safe to do so, suddenly drove the truck forward and caused the accident and because of these acts of negligence and carelessness, plaintiff was injured.
Defendants deny that the truck operator was negligent in any way or manner and aver that plaintiff saw or should have seen the driver enter the truck's cab and knew or by the use of reasonable care should have known that the truck was about to be moved forward, and, moreover, was warned by the driver thereof that the truck was about to go forward; that the truck was started and moved forward in the usual and customary manner, carefully and slowly; that plaintiff by the exercise of reasonable care could have avoided the accident. Further pleading, defendants say that should it be found and held that the truck driver was negligent and that his negligence was a proximate cause of the accident, in such case they contend that plaintiff was guilty of contributory negligence in the respects above stated, and that such negligence bars recovery.
Trial of the case was concluded on December 12, 1940. It was taken under advisement by the court and on December 31st, prior to rendition of judgment, the Associated Indemnity Corporation filed a petition of intervention wherein it is averred that the intervenor insured the A. B. Pipe Supply Company, Inc., as employer, under the Employer's Liability Act of Louisiana, and for this reason paid to plaintiff, on account of the disability caused him in and from said accident, the sum of $300.30; and, in addition, in that certain proceeding entitled "Dave Richey vs. A. B. Pipe Supply Company, Inc.", filed in the Fifteenth District Court in and for Lafayette Parish, a compromise settlement, with the court's approval, was effected, whereby intervenor paid to said plaintiff the further sum of $416.80 in cash, which was accepted by him in complete discharge of all of intervenor's liability to him. Intervenor also alleged that it had paid the hospital and physician's bills incurred in treating plaintiff's injuries, in the sum of $250 made up of several accounts itemized in the petition.
Intervenor, availing itself of the provisions of Sections 7 and 23 of the Employer's Liability Act, as amended by Act 247 of 1920, and Act 85 of 1926, alleges that on account of said payments to plaintiff and for his account, it is subrogated to his rights *West Page 752 
against defendants to the extent of $981.40 and is entitled to be paid this amount by preference and priority out of any recovery by him herein.
Plaintiff and defendants moved to dismiss the intervention on the ground that it came too late; that to allow and consider it would require reopening of the case. The motion was overruled. Thereafter intervenor amended its petition by adding thereto a demand for reasonable counsel fee, fixed at $150. Defendants objected to the filing of this amended petition for the same reasons assigned in their objection to the filing of the original petition of intervention. The court reversed itself and dismissed the intervention as to defendants only. The case was reopened as between plaintiff and intervenor and the issues raised by the intervention were tried upon stipulation of counsel.
Defendants assign as error the court's refusal to dismiss the intervention as to plaintiff. Plaintiff here makes no complaint on this score. Defendants are without right to do so as they have nothing to gain nor lose from the court's action. The intervention is directed primarily against the plaintiff. He alone will be pecuniarly affected by judgment in intervenor's favor.
While the case was under advisement, defendants filed an application to reopen it to the end that testimony supporting the allegations of the application could be admitted. Affidavits to support the application were attached thereto. The application to reopen was opposed by plaintiff who also submitted counter affidavits. The application was denied with written reasons therefor.
Judgment was rendered for plaintiff in the sum of $3,500; also in intervenor's favor for $932.10 to be paid from the judgment in plaintiff's favor, and to that extent a lien on said judgment was recognized in intervenor's favor. The claim for attorneys' fee was rejected. After unsuccessful effort to procure a rehearing or a new trial, defendants appealed.
As neither plaintiff nor intervenor has appealed, nor answered defendants' appeal, no change in the judgment as between these appellees is permissible. Only defendants' side of the case is before us.
It is conclusively shown that it was the rule and custom that a signal of some kind be given the truck driver before he was warranted in driving the truck forward after a pile of pipe had been loaded thereon. Of necessity, such a rule should have prevailed. Without it, accidents would have been common. The truck driver testified that his helper, Ed Winfrey, at the time near the rear end of the trailer, did signal him to go forward, but Winfrey contradicts this statement. He was asked specifically if he knew whether any one of the crew gave the signal to go forward, to which he replied: "No. I do not". The driver gave the following testimony on this phase of the accident, to-wit:
"Q. Now, did anyone give you any signal of any kind for you to start up? A. Well, after I got in the truck and had the motor running I looked back through the window, and could see Winfrey right on the side of the trailer, and he raised his hand. I did not know what he was doing.
"Q. Was it necessary for someone to give you a signal? A. Yes, sir, because we talked about pulling up; Winfrey told me to go ahead and pull up when I started around.
"Q. That was before you got into the cab? A. Yes, sir."
* * *
"Q. You looked through the opening in the back of the cab? A. Yes, sir.
"Q. Before you proceeded forward? A. Yes, sir.
"Q. Did you see Dave? A. No, sir, he was standing on the left hand side of the trailer and could not see over where he was.
"Q. In looking back through the opening in the back of the cab, you did not look to the left, could not look unless you turned around? A. Yes, sir, I turned clear around."
It would seem clear that had the driver done what he says he did, he would have seen plaintiff pushing the section of pipe into desired position. The driver's seat is on the left side of the truck and so was plaintiff at the time. A slight glance from the left side of the cab would have been sufficient to reveal the situation to him. It is clearly shown that no signal to start was given the driver and also that he gave no signal of his purpose to start the truck.
It is true, as argued, that plaintiff was experienced in this character of work and knew well the modus operandi. An essential and integral part of the modus operandi was that the truck would not be started forward until all the pipe there had been loaded and was in proper place. Plaintiff was within his rights in relying upon the rule all knew to prevail in work of this character. A duty due him was breached. *West Page 753 
The negligence superinducing the breach is actionable.
We do not agree with the contention that plaintiff was also negligent simply because he saw the driver reenter the cab for the purpose of starting the truck. He had the right to assume that the driver would observe the custom and not start the truck until signaled so to do. The motor of the truck was allowed to run while the pipe was being loaded, therefore, plaintiff's attention was not attracted toward the driver as it possibly would have been had the motor been started after being dead. As the ground was wet and soft, it is not improbable, as contended, that the truck started off with a jerk and suddenly fouled plaintiff's foot as he says.
Defendants argue that plaintiff has not proven that he was seriously injured in the accident. Why he escaped from being fatally injured or injured much worse than the record discloses, approaches the mysterious. The wheel of this heavily laden truck actually rolled upon his prone body, stopped momentarily on the small of the back and was then slowly backed off. Yet, it is certain no bones were broken and it is not even certain that a fracture of any bone was sustained. Perhaps the wide face of the tire and the wet, soft dirt account for this.
Plaintiff was lifted from the ground by fellow workmen. He was given first aid by a local physician and then taken to a hospital in the City of Alexandria, where he was a patient for twenty-seven days. He alleges that as a consequence of the accident, he is totally and permanently disabled; that the nerves, ligaments and muscles of his back are badly torn and bruised; that his spine is dislocated and strained; that the sacro-iliac joint is broken and dislocated; that his left leg is stiff and he is forced to walk with a limp, accompanied by pain. Only a meager portion of these allegations is sustained by the testimony in this record.
In view of the truck's weight, it is certain that the muscles, tissues, etc., of plaintiff's lower back were mashed and bruised. The fact that he had to be hospitalized for twenty-seven days unquestionably shows that he suffered substantial injuries. However, no attending physician was offered to prove the nature, extent and character of the specific injuries as they appeared while plaintiff was in the hospital. X-ray pictures made at that time disclosed no fractures nor broken bones. Pictures made by Dr. Caldwell, orthopedic surgeon in Shreveport, seven months after the accident, in his opinion, reveal old trauma to the fourth and fifth lumbar vertebrae. He examined plaintiff physically a few days prior to the trial and testified that he "walked with a very marked limp, protected gait, extremely guarded with his back", and that he would continue to suffer pain. He found reflexes of the muscles to be normal. It was his opinion that plaintiff is unable to do heavy work. He was reluctant to estimate the period of such disability, but finally said that if plaintiff did recover from the disability, it would require not less than ten or twelve months.
Plaintiff testified that he suffered pain incessantly in his back for six months and during this time hot water bottles were used in the effort to alleviate them; that intermittently, pain develops in the back and legs; that he had not since the accident and could not do manual labor through which he had earned a livelihood. It is shown that he was a strong, healthy man before being hurt. His testimony is corroborated by that of a sister-in-law in whose home he lived for several months after being discharged from the hospital and who assisted in administering to his ailments.
In June, 1940, plaintiff compromised with his employer's insurer for $416.80. He had already received $300.30, being twenty-one weeks' compensation at $14.30. When the compromise was effected, plaintiff should have known the extent of his physical injuries and disability as well as he did when he filed suit only two months later. In the petition, filed in connection with the compromise, it is stated that he sustained sacro-iliac sprains and serious injury to his legs and back with attendant nervous involvement. He also alleged therein that he believed his disability to be total and permanent as he did in the petition in this tort action. There is no contention nor intimation that in the interim his condition changed for the worse. In view of his then and present professions, it is very strange that he would have accepted so small a sum in cash and given up the right to further payments of compensation. If he was totally and permanently disabled when he filed the present suit, undoubtedly he was in that condition two months previous. However, we do not believe he is now so affected nor *West Page 754 
that his physical condition since being discharged by the hospital physicians has so indicated. The trial judge is also of this opinion.
As against the Metropolitan Casualty Insurance Company, it is contended that plaintiff has utterly failed to make out a case. This position is predicated upon the failure by plaintiff to introduce in evidence the policy of insurance issued by this defendant to Swink.
Plaintiff, in Article 19 of his petition, alleged: "Your petitioner shows that at the time of the accident above described, the truck owned and operated by the defendant, Douglas A. Swink, was covered by a policy of liability insurance written by the defendant, Metropolitan Casualty Insurance Company; and the Metropolitan Casualty Insurance Company is liable in solido with and for the negligence of the defendant, Douglas A. Swink, or any employee of the defendant, Douglas A. Swink, while operating a truck of the defendant, Douglas A. Swink."
Answering this article, the defendants aver: "In answer to the allegations of Paragraph 19 your defendants show that the policy of insurance is the best evidence of the contents thereof and the provisions therein, otherwise the allegations of this paragraph are denied."
Plaintiff argues that since the issuance of the policy is admitted, and no special defense to the suit was urged by the insurer, it is estopped to deny liability; that the failure to file the policy in evidence or to urge some special defense thereunder is the best evidence that had the policy been introduced in evidence, its contents would have been unfavorable to the insurer; that the burden of proof that the accident was not within the policy's coverage rested on the insurance company. Touching this issue the lower court in written reasons for judgment, said: "During the trial counsel for plaintiff and defendants had a discussion about the policy and about producing it and filing it in evidence, plaintiff contending that the defendants had admitted the existence of the policy in their answer, and defendants contending they had made no such admission. At that time I advised counsel for defendants that I considered their answer to paragraph 19 of the petition to be an admission of the existence of the policy, and that if they, (defendants), failed to produce and file it in evidence, I would, under the jurisprudence of our State, consider that if produced, it would be unfavorable to them. The rule, as I appreciate it, is, that if evidence under the control of a party to a suit is not produced by him, the inference is fairly drawn that if such evidence had been produced, it would have been unfavorable; and the insurance policy, the existence of which defendants admitted in their answer, was certainly under their control."
There are various forms of (public) liability insurance. Some policies, if not all, contain many restrictions and limitations with respect to the insurer's liability. Plaintiff alleges only that Swink's truck was insured by a policy of liability insurance
written by the Metropolitan Casualty Insurance Company and that that company is liable for the negligence of Swink's employee, the truck's operator. Defendants simply admit that "a policy of liability insurance" was issued by it and that its contents are the best evidence of what it contains. They deny that under the terms of the policy the insurer is liable for the truck driver's negligence. Whether the accident is within the policy's coverage may be determined only from the contents of the policy. The burden rested upon plaintiff, not defendants, to make out his case against the alleged insurer. He should have caused the original policy to be produced so that it could be offered in evidence or procured a copy thereof. In view of the allegations of the petition and the answer, above quoted, defendants have not admitted liability under the policy, but on the contrary, clearly denied such. We are not authorized to infer that the policy covers the facts of this case and, this being true, we have no right to hold the insurer responsible to plaintiff to any extent. We do not think the rule invoked by the lower court applicable here. The policy was not in the insurer's possession.
Defendants assign as error the overruling of their application to reopen the case prior to rendition of judgment. It is alleged in this application that since the trial of the case, new evidence had become known to defendants that is material and relevant to the facts of the case; that the existence of said evidence was unknown to them at the time of trial. The gravamen of the application and supporting affidavits is that plaintiff has been able to operate a road house and engage in fisticuffs and drunken brawls since he was injured and, therefore, the allegations that he was unable *West Page 755 
to work because of said injuries are untrue. The counter affidavits filed by plaintiff contradict the contents of those filed by defendants. The lower court discusses somewhat fully these affidavits and finally concluded: "I declined to reopen the case because I do not believe defendants used due diligence to discover this evidence prior to the trial, and for the further reason that it is doubtful that testimony of Van Esselberg is entitled to much credit anyway."
The Van Esselberg referred to made an affidavit that plaintiff came to his father's place of business in an intoxicated condition, became boisterous and insulting and threw heavy objects into the building after it had been closed because of his conduct; that he (affiant) engaged plaintiff in fistic combat and got the better of the battle although plaintiff offered stout resistance.
An application to reopen, such as is before us, like one for new trial, addresses itself to the sound legal discretion of the trial judge. His ruling thereon will not, save for clear reasons, be overruled. He states that defendants did not use due diligence in ascertaining the names of the witnesses and learning the nature of the evidence they would give if the case was reopened to admit their testimony. In fact, defendants do not allege that they made any effort whatever prior to trial to procure the testimony of these witnesses. This is indispensable to favorable action on such an application. It must clearly appear that the applicant has used every effort within his means to procure the evidence before trial. If there is doubt on the subject, it is resolved against the applicant. In addition to all this, if these witnesses were in court and testified in keeping with their affidavits and the plaintiff's witnesses did likewise, it is reasonably certain that the outcome of the case would not be different. To warrant remanding the case to admit the referred to newly discovered evidence, it should appear that such evidence would be sufficient to bring about a different result. We think the application was properly overruled.
Plaintiff follows heavy oil field work for a living. When injured he was earning $22 per week. His case, in some respects, has unique features. The trial judge experienced some difficulty in determining what he thought would be a proper award of damages. As a rule, we are loath to disturb the quantum of damages fixed by a trial judge in personal injury cases, but, after mature consideration of the facts of the present case, have reached the conclusion that the award is more than it should have been. It will be reduced to $2,500.
For the reasons herein assigned, the judgment appealed from, in so far as it condemns the Metropolitan Casualty Insurance Company, is annulled and reversed and the suit as against it is dismissed as in case of non-suit; and in so far as said judgment condemns the defendant, Douglas A. Swink, it is amended by reducing the amount thereof to $2,500. In all other respects said judgment is affirmed with costs.