MARVIN, Judge.
The employer and insurer appeal from a judgment for total and permanent disability benefits awarded the employee under the Workmen’s Compensation Law. We affirm.
Appellants contend that the employee was not a skilled or semi-skilled laborer as found by the trial court, but was a common laborer; that under either classification, the employee was not totally and permanently disabled, and that appellants’ motions below to reopen the case and for a new trial, both based on the grounds of newly discovered evidence, should have been granted.
At the time of the accident, employee had been employed about four months and had completed a 90-day training program as an operator of a metal corrugating machine. Employee was paid the wages of an operator even though he was classified as an operator-trainee. Plaintiff and a fellow operator were attempting to remove from the corrugating machine a sheet of metal which had jammed it when plaintiff’s right hand was severely crushed by a roller on the machine.
Plaintiff’s long finger was surgically amputated and other reconstructive surgeries were performed on plaintiff’s ring and index fingers. Estimating medical disability at 33 percent, the reconstructive surgeon testified that plaintiff will not be able to use his hand for jobs which require a moderate amount of dexterity or strength.
Plaintiff is unable to grip and hold either small objects of less than Vi inch diameter or large bulky objects weighing 25 lbs. or more. Plaintiff’s hand is sensitive to bumps and knocks and to changes in weather and becomes painful when used continuously in a squeezing motion.
As an operator of a corrugating machine, with a helper, plaintiff is required to feed sheets of metal into the machine and then to pull the corrugated sheet from the machine onto a buggy. Normally, the operator performs these functions while holding in his right hand the control switch box for the machine. The switch box may sometimes be placed by the operator into a catch box next to the machine; from which the switch box can be operated. In addition, an operator is sometimes required to manually perform tasks which include:
(1) Unjamming the machine rollers by using a torch or shears.
(2) Adjusting “stands” on the machine by turning knobs.
(3) Changing shear blades of 25-30 lbs. each.
(4) Removing and replacing eight sets of nuts and bolts in adjusting the machine.
(5) Reworking and removing air cylinders.
(6) Placing large and heavy rolls of steel onto the machine.
These tasks, of course, would require plaintiff to grasp and use wrenches and other implements such as cheater bars.
Under the circumstances, the lower court was correct in determining that plaintiff was a skilled or semi-skilled laborer, that plaintiff did not have sufficient dexterity to perform some of the functions required of him, that some functions would cause plaintiff “considerable pain,” and that *1071 plaintiff was totally and permanently disabled within the meaning of the law in effect at the time of the accident on July 7, 1971. Lucas v. Ins. Co. of North America, 342 So.2d 591 (La.1977).
Beginning in August, 1972, plaintiff worked intermittently at several jobs. For about two months in 1972, he was a clerk at a convenience store. For about the first six months of 1974, he operated a forklift for Otis International. Later in 1974 (June and July), he worked at Beaird-Poulan on an assembly line installing nuts and bolts on chain saws and later boxing the assembled product. In July and August, 1974, plaintiff worked in a supervisory capacity for Olincraft, and from March 30, 1975, until the trial in December, 1976, plaintiff worked as an exterminator, spraying homes with insecticide, for Terminex. Plaintiff sought other jobs during the period between 1972 and 1977 with Baker Oil Tools, Halliburton, Texaco and Roadway Truck Lines. Only the employment at Beaird-Poulan was remotely similar to plaintiff’s employment before the accident. Plaintiff testified that he could not do the work on the assembly line (bolting the cylinder head to the chain saw engine) which he tried for two weeks before being shifted to the boxing department, packaging the finished product. Plaintiff said the packaging activity caused soreness and inflammation and that he quit this position because of this and because the foreman suggested he either quit or be fired. Plaintiff thereafter attended Louisiana Tech University.
In the motion for a new trial, the employer and insurer allege that Director of Personnel of Beaird-Poulan would testify that the official personnel records reflect that plaintiff quit the Beaird-Poulan job to go to work for Diamond M Drilling Company for higher wages. It was this proposed evidence on which appellants sought a new trial after judgment and a reopening of the case below after submission before judgment. La.C.C.P. Arts. 1972, 1632. In the absence of a clear abuse of discretion, it is not error for a trial judge to refuse to reopen a case for evidence. Poche v. Frazier, 232 So.2d 851 (La.App. 4th Cir. 1970). The evidence (as alleged above) on which appellants sought a new trial or a reopening, in our opinion, could have been obtained during trial. The fact of plaintiffs employment with Beaird-Poulan arose during the direct examination of plaintiff and appellants had, or could have obtained, time during the trial in which to informally inquire of, or in which to subpoena either or both, Beaird-Poulan’s personnel records and its foreman. See Chauvin v. Chauvin, 297 So.2d 234 (La.App. 3d Cir. 1974). The alleged grounds for a new trial were not mandatory under 1972 and we find no abuse of discretion under La.C.C.P. Art. 1973.
The judgment below also denied plaintiff statutory penalties and attorney’s fees. Plaintiff did not answer the appeal. Penalties and attorney’s fees may not be awarded under these circumstances.
At appellants’ cost, judgment is
AFFIRMED.