472 So.2d 180 (1985)
Darlene M. JACOBS
v.
Soula O'BANNON, et al.
No. CA 2882.
Court of Appeal of Louisiana, Fourth Circuit.
June 5, 1985.
Rehearing Denied July 26, 1985.
*181 Paul B. Deal, Randall A. Fish, Lemle, Kelleher, Kohlmeyer, Hunley, Moss & Frilot, New Orleans, for plaintiff-appellee, defendant-in-reconvention-appellee Darlene M. Jacobs.
Paula Perrone, in pro. per.
George T. Mustakas, II, Metairie, for defendants-appellants plaintiffs-in-reconvention-appellants Soula O'Bannon and Paula Perrone.
Before SCHOTT and KLEES, JJ., and PRESTON H. HUFFT, J. Pro Tem.
SCHOTT, Judge.
This appeal is by Soula O'Bannon and her former attorney, Paula A. Perrone from a judgment in favor of Darleen Jacobs dismissing the reconventional demand of O'Bannon and Perrone for defamation on an exception of no cause of action and motion for summary judgment. The principal issue is whether statements made in a brief to an appellate court reviewing a judgment dismissing a paternity suit may be actionable as defamatory when they suggest the possibility that the child could have been conceived in an incestuous union between O'Bannon and her father. Other issues raised by appellant include the trial court's disposition of discovery matters and a contempt adjudication against Perrone.
The present suit is the third in a series involving these parties and Jacob's former client, Dr. Robert Azar. In the first, O'Bannon sought to have Azar declared the father of her child. Her suit was dismissed and the judgment was affirmed by this court. O'Bannon v. Azar, 435 So.2d 1144 (La.App. 4th Cir.1983). Writ Denied 441 So.2d 749 (La.1983). Cert. Denied ___ U.S. ___, 104 S.Ct. 1710, 80 L.Ed.2d 183 (1984). For convenience and clarity this case will be referred to as Suit I.
Following the loss of Suit I in the trial court O'Bannon brought suit in the United *182 States District Court against Jacobs, Azar and others claiming that her civil rights had been violated in that the state court judge and certain individuals and witnesses had been manipulated and intimidated particularly by Jacobs who allegedly had great political influence. According to appellee's brief this suit was subsequently dismissed.
Based upon the allegations contained in O'Bannon's federal civil rights suit (Suit II) in which she was represented by Perrone, Jacobs initiated the present suit against O'Bannon and Perrone for defamation. In the meantime, Suit I was pending in this court on appeal and Jacobs filed a brief in behalf of Azar who was the appellee. In the brief while defending the trial court's findings that O'Bannon had failed to prove Azar's paternity Jacobs referred to the fact that O'Bannon's father who lived in Baton Rouge had sometimes stayed overnight with his daughter in New Orleans; and Jacobs raised the possibility that O'Bannon's child could be the issue of an incestuous union with her father. Based upon these statements by Jacobs, O'Bannon reconvened against Jacobs for defamation in the present suit.
Jacobs responded to the reconventional demand with an exception of no cause of action and motin for summary judgment. In extensive reasons for judgment the trial court found that Jacobs' statements were not false per se and she had a qualified privilege to make them.
One of the elements critical to the maintenance of a defamation suit is the falsity of the statement. Cangelosi v. Schwegmann Bros., Etc., 390 So.2d 196 (La.1980). While the statements made by Jacobs may be very painful to O'Bannon and contain the suggestion of unthinkable conduct on O'Bannon's part they cannot be said to be false per se. Anything is possible; and Jacobs was merely stating a possibility which existed in this case however remote it may be.
In addition to the missing element of falsity in O'Bannon's claim, it is also barred by the principle of qualified privilege in favor of attorneys with respect to pleadings and briefs they file. As in Mitchell v. Truck Service, Inc. 286 So.2d 112 (La.App. 4th Cir.1973) the offensive statements constitute just a few words from a lengthy brief. The readership consists of some judges on the court of appeal and their law clerks who are regularly and constantly treated to exaggerated self serving statements in arguments of appellate counsel. Under these circumstances the statements are not actionable as defamatory.
Finally, a policy consideration militates against O'Bannon's position. Jacobs mentioned a possibility which was offensive to O'Bannon. In numerous cases counsel raise possibilities which may be offensive to some. For instance personal injury and compensation claimants are accused of being malingerers, the possibility of fraud on the part of the over-treating physician is raised, as well as the possibility of collusion on counsel's part for sending the claimant to a "friendly physician." In domestic cases the possibility of a father shirking his parental responsibility and hiding his income is frequently raised. In every paternity case the possibility of someone other than the defendant being the father is raised and frequently these possibilities include infidelity and adultery. Here we have the added horrible ingredient of incest to an already repugnant list of possibilities of immoral conduct.
To allow defamation suits to arise out of statements like these would foster an interminable flood of litigation. Whenever one took umbrage to such statements he or she might file suit. Even worse, after the initial defamation suit is concluded, more defamation suits would follow to obtain satisfaction for offensive statements made in the first defamation suit. The present case is a classic case of bitter litigation being conducted by aggressive, zealous counsel. Unless a qualified privilege protects them and their clients against prosecution for words uttered and statements made in the heat of litigious battle lawsuits among them might never end.
*183 Having concluded that the trial court correctly dismissed O'Bannon's reconventional demand we turn to the other issues before us. O'Bannon and Perrone seek to reverse a judgment ordering them to answer a number of written interrogatories and Perrone seeks to reverse a judgment holding her in contempt. Finally, O'Bannon and Perrone seek to compel Azar to submit to a blood test.
In regard to the judgments concerning the interrogatories and contempt proceedings there is a question as to the timeliness or propriety of the appeals from these judgments. They were both rendered and signed on May 11, 1984 and the appeal was not taken until August 1, 1984. It may be that the sixty day delay provided by LSA-C.C.P. Art. 2087 for a devolutive appeal had run. However, the record does not show when notices of these judgments were mailed so that we would not dismiss the appeal on this basis. But there is also a question as to whether the proper remedy with respect to these rulings was to invoke our supervisory jurisdiction. Nevertheless, because of the ultimate conclusion we reach, we need not address these problems.
In his reasons for judgment on the rule regarding the interrogatories the trial court found previous answers by O'Bannon and Perrone to be "evasive." We are not presuaded that this conclusion is erroneous; nor do we not find that the trial judge abused the great discretion vested in him in discovery matters when he ordered the interrogatories answered.
The same applies to the contempt ruling which grew out of Perrone's failure to attend two depositions which had been scheduled. Here the trial court was confronted with conflicting statements of these counsel which was resolved in favor of Jacobs. We do not interfere with the trial court's credibility determinations. Nor do we find the trial court abused its discretion in holding Perrone in contempt of court.
Finally, O'Bannon and Perrone attack a judgment of the trial court which refused to order Azar to submit to a blood test. We have concluded that this matter is not properly before us. The trial court denied the motion to compel the test on September 21, 1983. At that time Azar was not a party to this suit. He was brought in by reconventional demand filed on September 26. From the judgment of September 21 no appeal was taken and no supervisory writs were sought. The present appeals were taken on April 9, 1984, this one specifically and exclusively from the judgment dismissing the reconventional demand, and August 1, 1984, this one specifically and exclusively from a purported judgment of June 1, 1984 which we presume to be the judgments concerning the interrogatories and contempt.
No procedural vehicle was ever filed to bring the blood test rule to this court. Instead, appeals were taken from subsequent judgments and in brief and argument the appellants for the first time complain about this stale ruling made over a year before their brief was filed here. Because the matter is not properly before us, we do not reach the issue of whether the trial court properly refused to compel Azar to submit to another blood test.
Accordingly, the judgments appealed from are affirmed.
AFFIRMED.