KLEES, Judge.
Plaintiff Darleen Jacobs appeals the judgment of the trial court holding she was not defamed by allegations contained in a federal civil rights complaint filed against her by defendant Paula Perrone on behalf' of Perrone’s client, Soula O’Bannon. We affirm.
The present suit is the most recent in a protracted chain of litigation involving these parties and Jacob's former client, Dr. Robert Azar. Initially, O’Bannon, represented by Perrone, filed suit in civil district *563 court seeking to have Azar declared the father of her child. After a full trial on the merits, her suit was dismissed, and the judgment was affirmed by this court. O’Bannon v. Azar, 435 So.2d 1144 (La. App. 4th Cir.1983); writ denied, 441 So.2d 749 (La.1983); cert. denied, 466 U.S. 928, 104 S.Ct. 1710, 80 L.Ed.2d 183 (1984).
One day before the final day of testimony in the paternity trial, Perrone filed on behalf of O’Bannon a federal district court suit alleging that Jacobs, Azar and others had conspired to deny O’Bannon her right of meaningful access to the courts in the paternity trial by improperly influencing and intimidating the judge and certain witnesses. The allegations of the federal civil rights complaint, which was ultimately dismissed, then became the basis of the present suit in defamation filed by Jacobs. Additionally, Perrone made a reconventional demand in the instant suit alleging that Jacobs had defamed her by suggesting in a brief filed in the appeal of the paternity suit that O’Bannon’s child might have been the result of an incestuous relationship between O’Bannon and her father. The district court granted a summary judgment dismissing the reconventional demand on the grounds that statements in an attorney’s brief are protected by a qualified privilege, and we affirmed that judgment. Jacobs v. O’Bannon, 472 So.2d 180 (La. App. 4th Cir.1985).
Jacobs’ claim proceeded to trial, at the conclusion of which, the jury determined that the allegations of the federal court pleading had not defamed her. On appeal, plaintiff asserts that numerous errors on the part of the trial court require reversal of the judgment. We disagree.
Plaintiff’s main contention is that the trial judge committed manifest error by failing to grant a directed verdict. Plaintiff argues that the trial judge should have directed a verdict on the issue of defendants’ liability, or, in the alternative, holding that the allegations of the federal complaint were defamatory per se. In refusing to grant plaintiff’s motions, the trial judge indicated that although the pleading contained defamatory language, he felt that the issue must go to the jury to determine whether a qualified privilege applied. The trial judge therefore recognized that the question of whether the allegations were defamatory is inextricably bound up with the defense of qualified privilege asserted in this case.
A privileged communication is a statement which, except for the occasion on which or the circumstances under which it was made, would be defamatory and actionable. Madison v. Bolton, 102 So.2d 433, 439 (La.1958). This court has recognized the established principle of Louisiana law that, in making a determination as to whether words are defamatory, we must look not only to the words themselves but to the context and circumstances in which they were used. Becnel v. Boudreaux, 340 So.2d 687, 688 (La.App. 4th Cir.1976), writ denied, 342 So.2d 671 (La.1977).
Defendants argue that the language complained of, which was contained in a pleading filed in federal court, enjoys a qualified privilege. According to the Supreme Court, the essential elements of such a privilege are “good faith, an interest to bé upheld and a statement limited in scope to this purpose, a proper occasion, and publication in the proper manner and to proper parties only.” Madison v. Bolton, supra, at 439 n. 7. In a later decision, the Court held that statements made by an attorney in a judicial proceeding enjoy a qualified privilege, and, in order for the privilege to apply, the statements must be material and must be made with probable cause and without malice. Freeman v. Cooper, 414 So.2d 355, 359 (La.1982).
Our review of the evidence presented in this case convinces us that the trial judge did not err in refusing to grant a directed verdict because there was sufficient evidence presented from which the jury could have reasonably concluded that the statements were not defamatory and were protected by a qualified privilege. Plaintiffs primary evidence to show malice on the part of Perrone was her feeling that Per-rone was bitter over losing the paternity suit. We note, however, that the federal suit was filed before the paternity trial *564 ended. The defendants, on the other hand, presented more than sufficient evidence to show that the allegations in the federal complaint were made with probable cause and were not made maliciously.
Perrone testified that she based each allegation on what she herself had observed during the discovery phase and trial of the paternity suit, or on what she was told by Robert Doud, a defense witness, or by Doud’s two grown children, also potential witnesses. Perrone stated that she believed the judge in the paternity trial was being “pressured” because he acted very differently from his ordinary demeanor in previous cases she had tried under him; for instance, he seemed aggravated by her requests to make her pretrial motions a part of the record. Perrone also stated that Jacobs deliberately blocked her attempt to get truthful answers to proper questions during the deposition of Sharon Doud, a key witness in the paternity trial, which led Perrone to believe that Jacobs was concealing evidence. According to Perrone’s testimony, Jacobs lied to the judge when she stated during the paternity trial that she was surprised by the appearance of Mary and Timothy Doud as witnesses, as a result of which they were not allowed to testify. Finally, Perrone testified as to a sequence of events which led her to believe that the medical tests done by Dr. Hegre, an expert used by Jacobs in the paternity trial, were fabricated.
Robert Doud testified that Jacobs personally threatened him in the hall outside the courtroom during the paternity trial, and told him he was under criminal investigation, which was not true. He also confirmed that he had told Perrone that he did not want his children, Mary and Timothy Doud, to come to New Orleans to testify in the paternity trial because they had been harassed and he feared for their safety. Finally, there was no plausible explanation presented for the highly unusual incident that occurred when Robert Doud, while on the stand in the paternity trial, had certain photographs taken from him by a representative of the district attorney’s office, although there was apparently no criminal investigation for which the photographs could have been necessary. Perrone testified that she had received a phone call from Mason Spong, a police officer assigned to the district attorney’s office, in which Spong had indicated that Jacobs was behind the incident. Robert Doud was a major witness for the plaintiff in the paternity trial because his testimony discredited that of his former wife Sharon Doud, who claimed she had performed a vasectomy on Dr. Azar, the defendant, at her home on a particular date. It was also clear that Doud’s children, had they been allowed to testify, would have supported Robert Doud in discrediting their mother’s story.
We find that the evidence presented was sufficient to show that Perrone had a reasonable basis for making these specific allegations in the federal complaint in an effort to show that Jacobs and others had conspired to deprive O’Bannon of her civil rights in connection with the paternity trial. While the evidence did not establish conclusively either the truth or falsity of the allegations, it did establish that they were made with probable cause and without malice. Moreover, the statements were made in a federal pleading and were clearly material to the cause of action asserted therein. As several federal courts have held, a conspiracy may be implied by a course of conduct and other circumstantial evidence. See Cackling Acres, Inc. v. Olson Farms, Inc., 541 F.2d 242 (10th Cir. 1976), cert. denied, 429 U.S. 1122, 97 S.Ct. 1158, 51 L.Ed.2d 572 (1977), and cases cited therein.
Because the defendants have shown materiality, lack of malice and probable cause, we find that the statements complained of were protected by the qualified privilege in favor of attorneys with respect to briefs and pleadings filed in court. As we stated previously in affirming the dismissal of Perrone’s reconventional demand in this case:
To allow defamation suits to arise out of statements like these would foster an interminable flood of litigation. Whenever one took umbrage to such statements he or she might file suit. Even worse, after the initial defamation suit is con- *565 eluded, more defamation suits would follow to obtain satisfaction for offensive statements made in the first defamation suit. The present case is a classic case of bitter litigation being conducted by aggressive, zealous counsel. Unless a qualified privilege protects them and their clients against prosecution for words uttered and statements made in the heat of litigious battle, lawsuits among them might never end.
Jacobs v. O’Bannon, supra, 472 So.2d at 182.
Accordingly, the trial judge did not err by refusing to direct a verdict in plaintiffs favor or by refusing to grant a directed verdict on the grounds that the allegations were defamatory per se. A directed verdict is only proper when, viewing all the evidence in the light most favorable to the nonmoving party, the court concludes that reasonable persons could not arrive at a contrary verdict. Breithaupt v. Houston General Ins. Co., 398 So.2d 608 (La.App. 3d. Cir.1981). On the other hand, if there is substantial evidence opposed to the motions such that reasonable men in the exercise of impartial judgment might reach different conclusions, the matter must be submitted to the jury. Breithaupt v. Sellers, 390 So.2d 870 (La.1980). In the instant case, the trial judge correctly followed this standard in denying plaintiffs motions for directed verdict.
Plaintiff raises several other issues in her brief concerning evidentiary rulings made by the trial judge and the propriety of certain jury interrogatories and jury instructions. Our review of the record shows that none of these actions on the part of the trial judge, either individually or collectively, constitute manifest error sufficient to overturn the jury’s verdict. We therefore decline to reverse the judgment on this basis.
Defendants, for their part, have argued that they are entitled to damages for a frivolous appeal, which we'also deny.
Accordingly, for the reasons stated, the judgment of the trial court dismissing affirmed. plaintiffs action in defamation is hereby
AFFIRMED.