KNOLL, Judge.
Relator, Benjamin T. Stanford, seeks supervisory relief from a judgment ordering him to submit to DNA blood testing in a paternity action,[1] contending that he had already submitted to a HLA system blood test.
On June 26, 1985, the State filed a paternity action against Stanford. After Stanford denied the allegations of the petition, the trial court, on motion of the State, ordered Stanford, Deborah Handler, the mother of the child, and the child to submit to blood tests. The initial report of the blood test results shows that blood samples were drawn from the three individuals on June 4, 1986, and that HLA system tests excluded Stanford as the father of the child. On July 10, 1986, the State filed the HLA system test results into the record. On July 17, 1986, the State sent a letter to defense counsel, notifying him of the test results favorable to Stanford and advising that it would forward a copy of the judgment of dismissal as soon as it was signed. No judgment of dismissal was ever forthcoming.
Instead, after a lapse of almost three and one-half years, on March 5, 1990, the State filed into the record a contradictory test result. This test result dated August 1, 1986, shows that based on testing done on blood samples drawn from Stanford, Handler, and the child,[2] Stanford’s paternity of the child was “practically proved.”[3] These test results were served on defense counsel, and were met with a peremptory exception of res judicata and a motion to strike the August 1,1986, blood test report. At a hearing on these issues, the State agreed to withdraw the August 1, 1986, report of the test results and the trial court denied Stanford’s peremptory exception of res judicata. On September 17,1990, this appellate court denied Stanford’s writ application on the trial court’s denial of the peremptory exception of res judicata.
On February 20, 1991, the State filed a rule nisi, seeking an order requiring Stanford to show cause why he, Handler, and the child should not submit to DNA blood testing. By order signed April 30, 1991, the trial court ordered the three individuals to undergo DNA blood testing. Stanford then perfected this writ application.
On July 11, 1991, we granted Stanford’s writ application, stayed further proceedings in the trial court, and called up the record for briefing and argument.
Stanford, relying on LSA-R.S. 9:397.3, first contends that before the trial court can order additional blood tests, it must find that there has been a procedural error in the administration of the initial test.
LSA-R.S. 9:397.3 provides:
“A. A written report of the results of the initial testing, certified by a sworn affidavit by the expert who supervised the tests, shall be filed in the suit record. A notice that the report has been filed shall be mailed by certified mail to all parties by the clerk of court or shall be served in accordance with Code of Civil Procedure Article 1314. A party may challenge the testing procedure within *750 thirty days of the date of receipt or service of the notice.
B. If the court finds there has been a procedural error in the administration of the tests, the court shall order an additional test made by the same laboratory or expert. If there is no timely challenge to the testing, procedure or if the court finds there has been no procedural error in the testing procedure, the certified report shall be admitted in evidence at trial as prima facie proof of its contents, provided that the party against whom the report is sought to be used may summon and examine those making the original of the report as witnesses under cross-examination.
C. Any additional testing ordered by the court pursuant to this Part shall be proved by the testimony of the expert.
D. If the court finds that the conclusions of all the experts as disclosed by the reports, based upon the tests, are that the alleged father is not the father of the child, the question of paternity shall be resolved accordingly. If the experts disagree in their findings or conclusions, the question shall be submitted upon all the evidence.”
Stanford argues that since the State failed to challenge the testing procedure within thirty days of the date of receipt or service of notice, it cannot circumvent LSA-R.S. 9:397.3 by seeking an additional test.
From the outset, we note that in seeking the DNA testing the State has not asserted that there was a procedural error in the administration of the initial test, and the trial court made no such finding.
We likewise note that the thirty day time period for challenging the testing procedure commences when the Clerk of Court mails the test results by certified mail to the parties or when it is served on the parties in accordance with LSA-C.C.P. Art. 1314. LSA-R.S. 9:397.3(A). In the case sub judice, the record shows that the Clerk of Court followed neither procedure with the initial test results. Accordingly, it may be argued that the time frame for traversing the expert’s report was significantly broadened, if in fact it has commenced at all. However, since such a determination is inconsequential to our resolution of the question before us, we need not further elaborate on this issue.
In Jones v. Thibodeaux, 445 So.2d 44 (La.App. 4th Cir.1984), writ denied, 448 So.2d 112 (La.1984), our brethren of the Fourth Circuit stated:
“By adopting the Uniform Act on Blood Tests to Determine Paternity, the legislature intended to provide a carefully regulated evidentiary procedure having precedence over laws of general applicability. The thrust of the statute is to make available scientific evidence, adduced through medical experts appointed by the. court and called to testify by the court. McGowan v. Poche, 393 So.2d 278 (La.App. 1st Cir.1980).”
The Uniform Act on Blood Tests to Determine Paternity was promulgated in 1952 by the National Conference of Commissioners on Uniform State Laws. Louisiana adopted the act in 1972. LSA-R.S. 9:396 provides the authority for the trial court to order the drawing of blood samples in any civil action in which paternity is a relevant fact so that inherited characteristics in the samples may be determined by appropriate testing procedures. LSA-R.S. 9:397 provides for the selection of the experts to conduct the tests. LSA-R.S. 9:397.2 provides for proof of the chain of custody of the blood samples to meet the requirements for the admissibility of the blood tests results.
LSA-R.S. 9:397.3 addresses the admissibility and effect of the blood test results, and provides the following: (1) the procedure for filing the results of the initial testing and certification required; (2) the manner in which the Clerk of Court is to notify the parties of the filing of the test result; (3) the time period within which a party may challenge the testing procedure, commencing on the date the challenging party receives notice of the filing; (4) the authority of the trial court to order retesting when it has determined that a procedural error occurred in the administration of the test; (5) the evidentiary effect of the *751 test results on the question of paternity when either there has been no challenge made or a judicial determination that no procedural error occurred; and, (6) directory language to the trial court on how it is to resolve paternity in instances where the test results either preclude a finding of paternity or the experts are in disagreement in their findings or conclusions.
From a plain reading of LSA-R.S. 9:397.3 we do not find that the trial court is restricted in ordering additional blood tests to instances where there has been a showing that a procedural error occurred in the administration of the test. Rather, LSA-R.S. 9:397.3 simply provides a procedure for retesting if there has been a challenge on the basis of an error in the administration of the testing, and the trial court concludes that a procedural error has in fact occurred.
Stanford further contends that if the State intended to challenge the test results, it had to file a traversal within the thirty day period. LSA-R.S. 9:397.3(A) provides that a party “may challenge the testing procedure within thirty days of the date of receipt or service of the notice.” (Emphasis added.) Under the wording of the statute, a challenge is clearly permissive and not mandatory. In fact, LSA-R.S. 9:397(B) provides that where no timely challenge is forthcoming, “the party against whom the report is sought to be used may summon and examine those making the original of the report as witnesses under cross-examination.”
Nevertheless, notwithstanding Stan-, ford’s arguments, we find that LSA-R.S. 9:396(A), 9:397, and 9:397.3 clearly contemplates additional testing. We further find that the State’s request for DNA testing must be analyzed in light of the general authority granted the trial court under these cited sections of Part I-A of Title VII which provides:
LSA-R.S. 9:396(A):
“A. Notwithstanding any other provision of law to the contrary, in any civil action in which paternity is a relevant fact, or in an action en desaveu, the court, upon its own initiative or upon request made by or on behalf of any person whose blood is involved, may or, upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child, and alleged father to submit to the drawing of blood samples and shall direct that inherited characteristics in the samples, including but not limited to blood and tissue type, be determined by appropriate testing procedures. If any party refuses to submit to such tests, the court may resolve the question of paternity against such party or enforce its order if the rights of others and the interests of justice so require.”
LSA-R.S. 9:397:
“The tests shall be conducted by a court appointed expert or experts qualified as examiners of blood samples for inherited characteristics, including but not limited to blood and tissue type. The number and qualifications of such expert or experts shall be determined by the court.
LSA-R.S. 9:397.3 is set forth above.
Under LSA-R.S. 9:396(A), it is clear that a trial court, either on its own motion or by motion of one of the parties, may order the parties to submit to the drawing of blood so long as it will not delay the proceedings unduly. Nothing contained in LSA-R.S. 9:396 limits the parties to submission to a blood test only once. LSA-R.S. 9:397 clearly contemplates that more than one test may be ordered as this section leaves to the trial court’s discretion the number and qualifications of the experts. Further, LSA-R.S. 9:397.3(C) clearly contemplates additional testing, not only under the provision of that section, but “Any additional testing ordered by the court pursuant to this Part shall be proved by the testimony of the expert.” Therefore we find that the proper analysis of the issue presented herein involves a twofold inquiry: (1) would the taking of additional blood samples delay the proceedings unduly; and, (2) considering the facts of the case sub judice, did the trial court abuse its discretion?
There is no evidence before us that would suggest that DNA testing of blood *752 samples drawn from the parties would unduly delay the proceedings. On this ground, we find the cases of O’Bannon v. Azar, 435 So.2d 1144 (La.App. 4th Cir.1983), writ denied, 441 So.2d 749 (La.1983), cert. denied, 466 U.S. 928, 104 S.Ct. 1710, 80 L.Ed.2d 183 (1983), and D.M.J. v. B.G.B., 576 So.2d 737 (La.App. 4th Cir.1991), writ denied, 578 So.2d 932 (La.1991), distinguishable. In O’Bannon the request for additional testing was made during trial and in D.M.J. the request was made as an alternative argument in the appellate court. In the present case, the State’s request for additional testing comes in advance of trial.
On the second inquiry, we likewise find that the trial court did not abuse its discretion in ordering the additional testing. There is a cloud on the paternity of the child in the present case that should be decided. The mere fact that Louisiana adopted the blood tests statutes as an aid for determining paternity of a child, is demonstrative of the State’s strong intent to have paternity decided as correctly as possible. Since the proceedings were left open, and in view of the State’s strong interest in proving paternity, we do not find the time element involved between the ordering of the blood tests an abuse of discretion.
In no way will this additional DNA test deprive Stanford of any rights he may have acquired because the State failed to traverse the initial test. Under LSA-R.S. 9:397.3(B) when the initial test results in favor of Stanford are admitted into evidence, it will be prima facie proof of its favorable contents. If the expert evidence disclosed in the DNA testing is adverse to Stanford, the trial court will be presented with contrary experts’ findings and conclusions, and under LSA-R.S. 9:397.3(D) will have to decide the question of paternity on the basis of all evidence presented. As we appreciate the record, in light of these facts, we cannot say that the trial court abused its discretion in ordering the three parties to submit to a second blood test.
For the foregoing reasons, Stanford’s writ application is denied. Our earlier writ grant of July 11, 1991, is recalled and set aside. Costs of this proceeding in the appellate court are assessed to Benjamin T. Stanford.
WRIT DENIED.

. Stanford has not made an issue either in the trial court or on appeal of whether the trial court had authority to order DNA testing. Accordingly, we are not called upon to rule on this question. We note that our brethren of the Fourth Circuit have questioned this authority. See D.M.J. v. B.G.B., 576 So.2d 537 (La.App. 4th Cir.1991), writ denied, 578 So.2d 932 (La.1991).

. No additional blood was drawn from the three individuals on August 1, 1986. Even though the August 1, 1986, report shows that blood was drawn from the individuals on June 2, 1986, a date different from the initial report, it is undisputed that to date only one blood sample was taken from the individuals.

.The contrary test results were explained in argument by the State to the trial court, as follows: "... [T]hey [the medical personnel] contacted us and said there was an error in the computer input, and that the actual result is a probability of ninety-nine point nine-eight."