605 So.2d 222 (1992)
STATE of Louisiana, Plaintiff-Appellee,
v.
Perry SMITH, Defendant-Appellant.
No. 23956-CA.
Court of Appeal of Louisiana, Second Circuit.
September 23, 1992.
*223 Leroy Smith, Jr., Tallulah, for defendant-appellant.
James D. Caldwell, Dist. Atty., David F. Baughn, Special Asst. Dist. Atty., for plaintiff-appellee.
Before HIGHTOWER, VICTORY and STEWART, JJ.
STEWART, Judge.
Appellant, Perry Smith, appeals a judgment in favor of the State of Louisiana, establishing both his paternity and his child support obligation. We affirm.

FACTS
On August 27, 1983, the child at issue was born to Janice T. Nettles. At the time of conception, Mrs. Nettles was married to, but separated from Robbyee Nettles, who was shown as the father on the child's birth certificate. However, subsequent blood tests revealed that Mr. Nettles could not be the father of the child.
Pursuant to the provisions of LSA-R.S. 46:236.1(F), the State of Louisiana filed suit in 1987 to establish filiation on behalf of the minor child. At trial Mrs. Nettles testified that both during the three months prior to conception, and during the three months subsequent to conception, she had sexual relations only with her husband and Mr. Smith. On the other hand, Mr. Smith denied ever having sexual relations with Mrs. Nettles.
The only other witness to testify at the trial was Mrs. Nettles' mother. Her testimony added little because the mother was unaware that Mrs. Nettles was seeing Mr. Smith until after Mrs. Nettles became pregnant.
Blood tests results on Mrs. Nettles, Mr. Smith, the child, and Mr. Nettles, were introduced at trial without objection. These blood test results showed that while Mr. Nettles could not be the father of the child, the probability of paternity of Mr. Smith was 99.97% as compared to an untested, unrelated man of the North American *224 Black population. Mr. Smith's combined paternity index was 3,474 to 1.
At the conclusion of the trial, the court stated that it was satisfied with the blood test results, the testimony of Mrs. Nettles, and the testimony of Mr. Smith. While recognizing the contradictory testimony of the mother and the alleged father, the court found the blood test results persuasive, and concluded the state had proven by a preponderance of the evidence that Mr. Smith was the father of the child. The court then determined the amount of Mr. Smith's child support obligation based upon the essentially undisputed evidence concerning Mr. Smith's income.

ISSUES
1. Were the blood test results properly admitted into evidence?
2. Did the state carry its burden of proof?
3. Did the trial court abuse its discretion in making the child support award?

DISCUSSION
The pertinent provisions of LSA-R.S. 9:397.3 state that when no timely challenge is made to the statutorily established blood testing procedure for paternity actions, or if the court finds there has been no procedural error in the testing procedure, the certified report of the test results shall be admitted in evidence at the trial as prima facie proof of its contents. In the instant case, Mr. Smith entered no pleading to contest either the testing procedure or the results. Nevertheless, on appeal Mr. Smith argues that the test results were inadmissible because under the provisions of 9:397.3 notice of the filing in the record of the written report of the blood tests results either had to be mailed to Mr. Smith personally, or had to be served by the sheriff upon Mr. Smith's counsel of record, whereas the test results had been mailed to Mr. Smith's counsel of record.
This argument lacks merit for several reasons. First, there is no indication that Mr. Smith's right to notice was affected because there is no allegation that Mr. Smith did not receive notice in time to challenge the testing procedure. Furthermore, Mr. Smith's trial counsel made no objection to the admission of the test results. Under the pertinent provisions of Article 103 of the Louisiana Code of Evidence, error may not be predicated upon a ruling which admits evidence unless a substantial right of the party is affected, and the ruling admitting the evidence is met by a timely objection.
Mr. Smith has demonstrated no prejudice he has suffered as a result of the mailed notice of the filing of the blood test results to his trial counsel. Lack of service of the notice of filing of the blood test results was not raised in the general denial answer entered verbally on the day of trial; it was not raised in the formal general denial filed on August 2, 1991, and no objection was made to the state's introduction of the blood test results as State's Exhibit 1 during the trial. Any objections that could have been made concerning the service of notice have been waived. Thus, we hold that the trial court did not err in admitting the test results in the instant case, and that those results constituted prima facie proof of Mr. Smith's probability of paternity as compared to an untested, unrelated man of the North American Black population.
In Mr. Smith's other assignment of error, he complains that the state failed to carry its burden of proof. Whether there has been adequate proof of paternity is a question of fact provable by a preponderance of the evidence, and the trial court's determination of factual issues will not be disturbed absent manifest error. State in Interest of Lawrence v. Harrell, 582 So.2d 940 (La.App. 2d Cir.1991). See also LSA-C.C. Art. 209(A) and Rosell v. ESCO, 549 So.2d 840 (La.1989).
In the instant case, we find no manifest error in the trial court's paternity decision. Mrs. Nettles' testimony was consistent and unequivocal; Mr. Smith admitted knowing Mrs. Nettles; and the percent probability of paternity was extremely high.
*225 While we are cognizant that the blood testing procedure alone cannot establish paternity with absolute certainty, the combined paternity index of 3,474 to 1 indicates the extreme unlikelihood of Mrs. Nettles' falsely accusing a man of being her child's father, and a blood test then not excluding that man as the father. Nor does the record indicate any reason why Mrs. Nettles would accuse Mr. Smith other than her believing that Mr. Smith was the child's father.
The record shows the trial court did not rely solely upon the test results in its finding of paternity. That finding was also based upon the testimony of Mrs. Nettles. Moreover, while the test results were a key element in the court's conclusion that the state carried its burden of proof, we do not find the court placed undue weight on the test results.
Before turning to Mr. Smith's argument concerning the child support award, we note Mr. Smith argued in brief that an unfavorable inference should result from the state's failure to call witnesses who could have substantiated Mrs. Nettles' relationship with Mr. Smith. We recognize that as a general rule the failure to produce a witness who has special knowledge essential to a party's cause, when such a witness is available and under a party's control, raises a presumption that the witness' testimony would be detrimental to that party's cause. See Martin v. Howard Brothers Discount Stores, Inc., 412 So.2d 631 (La.App. 2d Cir.1982). However, in this case certain individuals to whom Mrs. Nettles referred in her testimony did not have knowledge essential to the state's case. They were not witnesses to the actual sexual relationship between Mrs. Nettles and Mr. Smith. Furthermore, the record does not indicate that these individuals were more available to the state than to Mr. Smith, and there is no indication that any of these individuals were under the state's control. Accordingly, no unfavorable inference attached in this case. Instead, the state presented sufficient evidence to carry its case by a preponderance of the evidence.
Finally, we observe that while Mr. Smith does not assign the amount of the child support award as error, he makes a short argument in brief in which he points out that while the court made child support retroactive to 1987 (the year the petition was filed), the evidence only established Mr. Smith's present income in 1991. A similar argument is made with respect to Mrs. Nettles' income. Additionally, Mr. Smith points out that there was evidence indicating he has another child whom he supports, and that this factor was not taken into consideration in establishing the amount of his child support obligation.
Under the provisions of LSA-R.S. 9:399, a judgment for child support rendered against a defendant, who has been adjudged in a suit to establish paternity to be the parent of the child for whom support is ordered, shall be effective from the date on which the paternity suit was filed. If the court finds good cause for not making the award retroactive, the court may make the award retroactive to a date subsequent to the filing of the suit, but in such instances the award may never be fixed at a date later than the rendition of the paternity judgment. Thus, the general rule is that a child support award will be retroactive to the date the suit was filed, and the exception occurs when the court finds good cause for doing otherwise. A district judge is not required to assign reasons as to whether good cause existed for not making a support award retroactive, Cantillo v. Cantillo, 503 So.2d 55 (La.App. 5th Cir. 1987), and we hold that the trial court likewise need not assign reasons for making such an award retroactive. Furthermore, the decision on retroactivity is one within the trial court's discretion.
In this case, the court made it plain that in deciding to make the obligation retroactive the court had considered both the burden which Mr. Smith would bear and the burden which Mrs. Nettles had borne in having to support the child in the interim between the filing of the action and the trial. Additionally, when setting the amount of child support, the court specifically noted Mr. Smith might be contributing to the support of another child, but the *226 court did not believe that Mr. Smith was under a court order to do so.
In this case, where retroactivity of the award was a considered decision by the trial court, where retroactivity was in conformance with the general rule of law, and where the trial court had considerable discretion in deciding to make the award retroactive, we hold the trial court did not abuse its discretion in making the award retroactive. In such circumstances, if the defendant did not want the award to be fully retroactive, then the defendant should have made a showing of good cause for not making the award retroactive. No such showing was made in this case. Similarly, if the defendant did not want the amount of the award set without the court considering the amount of the defendant's and the mother's income in past years, and the amount the defendant spent on the support of others, then the defendant should have furnished this information to the court. However, the defendant in this case did not furnish such information to the court. Accordingly, we find no error in the amount of the child support which the court made based on the evidence available.

CONCLUSION
In accordance with the foregoing reasons, the judgment of the trial court is affirmed at appellant's costs.
AFFIRMED.