JaLOTTINGER, Chief Judge.
This is a suit to establish paternity instituted by the State of Louisiana, Department of Social Services, in the interest of Kori Garrett, against the defendant, Kenneth Ashy. Dana Garrett, the mother of Kori Garrett, intervened to request child support. From a judgment rendered in favor of the State and Ms. Garrett, Mr. Ashy has appealed.
FACTS
Dana Garrett gave birth to Kori Garrett on December 8, 1988, and shortly thereafter, was deemed eligible to receive Aid For Dependent Children (AFDC) benefits from the state Department of Social Services in the amount of $123.00 per month.
As required by law, the State of Louisiana, in the spring of 1990, commenced an investigation to determine the paternity of the child. Ms. Garrett subsequently named the defendant, Kenneth Ashy, as the father of her child.
On May 29, 1990, blood samples of the mother, child and Mr. Ashy were taken and forwarded to Roche Biomedical Laboratories in Burlington, North Carolina, for genetic analysis. The results of the analysis indicating a 99.99% probability of paternity were *22 received on July 11, 1990, and forwarded to Mr. Ashy through his attorney. After reviewing the results, Mr. Ashy denied any affiliation to the child, and consequently, the instant suit was filed on August 17, 1990.
At trial of this matter in June of 1993, Ms. Garrett testified that she initially met Mr. Ashy in March of 1988 when they were confined for treatment at a chemical dependency unit (C.D.U.) in Lafayette, Louisiana. Ms. Garrett further testified that she and Mr. Ashy engaged in sexual intercourse on three occasions, twice in March of 1988, and once on April 4,1988. Mr. Ashy admitted that he had engaged in sexual intercourse with Ms. Garrett on two occasions in March, but contended that the encounter of April 4, 1988, was limited to oral sex performed on him by Ms. Garrett, and did not include sexual intercourse. It is undisputed that on all three occasions, no form of birth control was utilized.
Mr. Phil Bertrand, another patient at the C.D.U. during the time Ms. |8Garrett and Mr. Ashy were confined there, testified that he too engaged in sexual intercourse with Ms. Garrett, but asserts that this encounter occurred in the latter part of April, 1988, after their release from the C.D.U. Mr. Bertrand further testified that immediately following their encounter, Ms. Garrett advised him that she was pregnant, and subsequently disclosed that Mr. Ashy was the father of her unborn child.
The trial judge found in favor of the State and Ms. Garrett and against Mr. Ashy, on the issue of paternity. In accordance with stipulations of counsel, the trial judge further ordered that Mr. Ashy pay support to Ms. Garrett on behalf of the minor child in the amount of $305.23 per month in addition to reimbursement to the State of its AFDC payments from the filing of suit to the date of trial. From this judgment, Mr. Ashy has appealed.
ISSUES PRESENTED ON APPEAL
In appealing this judgment, Mr. Ashy sets forth eleven assignments of error which we can be summarized as follows:
(1)The trial court erred in finding that Kenneth Ashy engaged in intercourse with Dana Garrett on April 4,1988, and further, that he had “access” to Garrett at the time of conception.
(2) The trial court further erred in failing to give proper weight to the uncontrovert-ed testimony of medical experts, and by improperly qualifying Dr. Osborne as an expert in statistical analysis and thereafter, giving weight to his testimony at trial as a foundation for the admissability of blood tests and statistical evidence.
(3) The statutory scheme of La.R.S. 9:397 et seq., as applied, results in a denial of due process, and additionally, La.R.S. 9:397.3 unconstitutionally invades the rights of the judiciary guaranteed by the separation of powers provisions of the Louisiana Constitution.
(4) The trial court committed legal error by denying defendant’s proffer of evidence, and by failing to require plaintiff and inter-venor to prove their case by a preponderance of the evidence.
(5) The trial court abused its discretion by making support payments retroactive.
I.
Mr. Ashy contends that the trial court’s finding that he had sexual intercourse with Ms. Garrett on April 4, 1988, is erroneous, and further, that there is nothing in the record to support the trial court’s finding that he had “access” to Ms. [4Garrett at the time of conception.
As our supreme court has stated in Virgil v. American Guarantee and Liability Insurance Company, 507 So.2d 825, 826 (La.1987):
Louisiana’s three-tiered court system allocates the fact finding function to the trial courts. Because of that allocation of function (as well as the trial court’s normal procedure of evaluating five witnesses), great deference is accorded to the trial court’s factual findings, both express and implicit, and reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on appellate review of the trial court’s judgment.
The trial court heard testimony from both Ms. Garrett and Mr. Ashy concerning the *23 issue of whether or not they engaged in sexual intercourse on April 4,1988; Ms. Garrett asserted that she and Mr. Ashy had intercourse, while Mr. Ashy contended that he received oral sex. The trial judge noted in his reasons for judgment that he did not find Mr. Ashy’s testimony on this point to be credible. Accordingly, we cannot say that the trial court’s determination of this issue is unreasonable.
Mr. Ashy further alleges that there is nothing in the record to support the trial judge’s finding that he had “access” to Ms. Garrett at the time of conception. Mr. Ashy relies on the expert testimony of Dr. John M. Straub, a specialist in the field of obstetrics and gynecology, who testified via deposition that based upon his calculations, conception was likely to have occurred on the tenth of April, 1988 — plus or minus one day. Because there was no showing that Mr. Ashy and Ms. Garrett engaged in intercourse after the April 4, 1988 incident which Mr. Ashy claims did not occur, Mr. Ashy contends he had no “access” to Ms. Garrett.
As correctly noted by the State, Mr. Ashy’s entire defense presupposes the correctness of the calculations made by Dr. Straub as to the probable date conception occurred. While counsel in this matter stipulated to Dr. Straub’s expertise in the fields of obstetrics and gynecology, Dr. Straub admitted during the course of his testimony that from an OB-GYN standpoint, the determination of the date of conception is not important; rather, ultrasound technology is primarily used to calculate the estimated date of confinement or “due date” which physicians are more concerned with.
|sDr. Straub also conceded that differences in the quality of equipment used, and variations in the technique of those using the equipment are variables that should be taken into account by someone attempting to determine a date of conception. Dr. Straub further stated that there are no absolutes in determining the date conception occurred. While he admitted that the child could have been conceived on April 6, 1988, forty-eight hours after Ms. Garrett claims she had intercourse with Mr. Ashy, he felt it was more likely that conception occurred on April 9,10, or 11, 1988.
For an appellate court to reverse a trial court’s factual finding, it must find from the record that a reasonable factual basis does not exist for finding of the trial court and that the record establishes that the finding is clearly wrong. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987)....
... The rule that questions of credibility are for the trier of fact applies to the evaluation of expert testimony as well, unless the stated reasons of the expert are patently unsound. Lirette v. State Farm Insurance Company, 563 So.2d 850, 853 (La.1990).
Moreover, where two permissible views of the evidence exist, the fact finder’s choice between them cannot be clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d [880] at 883 [ (La.1993) ].
Hutzler v. Cole, 633 So.2d 1319, 1324 (La.App. 1st Cir.1994), writ denied, 637 So.2d 1070 (La.1994).
Because the date of conception was not conclusively established, we cannot say that the trial judge was manifestly erroneous or clearly wrong in his finding that Mr. Ashy had access to Ms. Garrett at or about the probable period of conception.
II.
Mr. Ashy also argues that the trial court further erred in failing to give proper weight to the uncontroverted testimony of medical experts, and by improperly qualifying Dr. Osborne as an expert in statistical analysis and thereafter, giving weight to his testimony at trial as a foundation for the admissibility of blood tests and statistical evidence.
In addition to the aforementioned testimony of Dr. John M. Straub, Mr. Ashy introduced the deposition testimony of Dr. Albert W. Beacham whose expertise in the field of urology was agreed to by stipulation. Dr. Beacham testified that at the | ^request of Mr. Ashy, he performed a routine seminal fluid analysis on Kenneth Ashy on June 15, 1993. On the date of this analysis, Mr. Ashy had a *24 normal sperm count with normal motility, forward progression, and morphology.
In his analysis of Mr. Ashy’s sperm, Dr. Beaeham noted a forty percent survival rate approximately twenty hours after collection, which dropped to fifteen percent at approximately forty-one hours post collection. In Dr. Beacham’s opinion, Mr. Ashy’s chances for conception became “markedly impaired” somewhere around thirty hours after collection, but fertilization was not technically impossible until approximately forty-nine hours after collection when all of the sperm in the sample had perished.
For the reasons previously stated, we cannot say that Dr. Straub’s estimation of the date of conception was “uncontroverted.” The trial judge found that Mr. Ashy and Ms. Garrett engaged in sexual intercourse on the evening of April 4, 1988, and concluded that conception could have occurred as late as April 6,1988, a period of thirty hours or less.
Having said this, we will now consider whether the trial judge erred in improperly qualifying Dr. Osborne as an expert in statistical analysis, and whether evidence of blood tests and/or statistical calculations was admitted without a proper foundation.
At the trial of this matter, Dr. Lloyd C. Osborne of Roche Biomedical Laboratories was accepted by the court as an expert in the application of genetic blood testing to paternity evaluation. Mr. Ashy asks this court to consider exactly what is meant by “the application of genetic blood testing to paternity evaluation.” While Mr. Ashy does not dispute Dr. Osborne’s qualifications relevant to the ascertainment of applicable blood characteristics, or his ability to determine from relevant tables, the incidence of these characteristics within the relevant population, Mr. Ashy contends that Dr. Osborne lacks sufficient knowledge in the field of statistics to perform statistical analysis of inherited characteristics. Alleging that Dr. Osborne is not qualified as a statistician, Mr. Ashy further contends that the trial court abused its discretion in ^permitting Dr. Osborne to testify as an expert.
At trial, Dr. Osborne testified that he is employed by Roche Biomedical Laboratories of Burlington, North Carolina, as the director in charge of quality assurance for the Department of Paternity Evaluation, and that he has been qualified as an expert in the application of genetic blood testing to paternity evaluation in approximately 150 trials in twenty-seven states, including Louisiana. In Louisiana alone, Dr. Osborne stated that he has previously been accepted as an expert in “three or four courts”, including the trial court. He holds a Ph.D. in the field of immunology, a masters degree in virology, and a bachelors degree in bacteriology. Dr. Osborne further stated that he has evaluated approximately 40,000 paternity cases, and that Roche Labs is accredited by the College of American Pathologists and the Parentage Testing Committee of the American Association of Blood Banks.
Dr. Osborne also testified that the calculations contained in his report on this case were performed by computer, and derived from a standard method known as the “Paternity Index Method” which is required by the American Association of Blood Banks. Both the tests and the gene frequency tables utilized by Roche Labs to calculate the odds of paternity in a particular case are accepted by the scientific community. If a man is not excluded from paternity based upon a blood analysis, the computer, using the paternity index method, then calculates the putative father’s odds of passing onto the child, a gene, found in the child, that the biological mother does not possess. The outcome is thereafter divided by the frequency that the gene in question appears in the general population according to' published gene frequency tables.
Because Dr. Osborne testified during cross-examination that he did not know if there exists an accepted formula for calculating the percentage of error inherent in the published gene frequency tables used by him in determining the percent of likelihood of paternity, Mr. Ashy contends that Dr. Osborne cannot be considered an expert in the field of statistical analysis.
In our review of this matter, we note that several Louisiana courts, including the trial court have previously qualified Dr. Osborne as an expert in the ^application of genetic *25 blood testing to paternity evaluation, and that the testing procedures and gene frequency tables utilized by Osborne and Roche Labs are accepted by the scientific community-
A trial court has great discretion in determining the qualifications of experts and the effect and weight to be given expert testimony. Experience alone is sufficient to qualify a person as an expert. Absent a clear abuse of the trial court’s discretion in accepting a witness as an expert, appellate courts will not reject the testimony of an expert or find reversible error.
The Uniform Act on Blood Tests to Determine Paternity, LSA-R.S. 9:396, et seq., authorizes the introduction of blood test results without the necessity of personal appearance and live testimony of an expert. Should an expert testify, however, he need not be the individual who actually drew the blood, performed the tests, or compiled the statistics for comparison. He may rely on data compiled by other technicians.
State v. Stringer, 567 So.2d 758, 761-62 (La.App. 2d Cir.1990) (citations omitted).
In light of Dr. Osborne’s training, work experience and the law with regard to the introduction of test results, we cannot say that the trial court abused its discretion in qualifying Dr. Osborne as an expert in the application of genetic blood testing to paternity evaluations. Additionally, and for the reasons stated above, we find no error in the trial court’s admission of the blood tests and other statistical evidence.
III.
Mr. Ashy next contends that the statutory scheme of La.R.S. 9:397 et seq., as applied, results in a denial of due process, and additionally, that La.R.S. 9:397.3 unconstitutionally invades the rights of the judiciary as guaranteed by the separation of powers provisions of the Louisiana Constitution.
Mr. Ashy argues that La.R.S. 9:397 et seq., as interpreted and applied, violates his due process rights because it requires the filing of the expert reports, which contain statistical opinions unequivocally prejudicial to the defendant, into the record (La.R.S. 9:397.3) without an adequate opportunity for the defendant to test the validity of the expert opinions rendered, either through testing the methodology used, the | gqualifications of the expert, or the assumptions made by the expert.
At trial, the State attempted to introduce the test results and attached expert reports formally into evidence. Defense counsel objected to the admissibility of this evidence on the grounds that the expert was supposed to appear, and that the defense had “substantial evidence with regards to the admissability of the entire test.” Based upon this objection, the court deferred ruling on the admissibility of the test results.
Later, the State tendered Dr. Lloyd Osborne, the director of quality assurance in the Paternity Evaluation Department of Roche Labs, as an expert witness in the application of genetic blood testing to paternity evaluations. Upon cross-examination, counsel for Mr. Ashy was given time for extensive questioning of Dr. Osborne as to his expertise in the area of genetic testing for paternity evaluation.
Mr. Ashy’s attorney was provided with an opportunity at trial to refute the test result, to question the expert’s opinions and qualifications, and to explore the testing methodology used. Therefore, we do not find that the statutory scheme of La.R.S. 9:397-397.3 as interpreted and applied resulted in a denial of Mr. Ashy’s right to due process.
Also, the fact that the report was filed into the record prior to the commencement of trial is of no moment given that the report could not be considered until it was received into evidence at trial. Touzet v. Mobley, 612 So.2d 890, 893 (La.App. 5th Cir.), writ denied, 614 So.2d 1263 (La.1993).
We now examine Mr. Ashy’s assertion that La.R.S. 9:397.3 unconstitutionally invades the rights of the judiciary as guaranteed by the separation of powers provisions of Article II, Section 2 of the Louisiana Constitution of 1974.
La.R.S. 9:397.3(B), provides in pertinent part:
*26 If there is no timely challenge to the testing procedure or if the court finds there has been no procedural error in the testing procedure, the certified report shall be admitted in evidence at trial as prima facie proof of its contents, provided that the party against whom the report is sought to be used may summon and examine those making the original of the report as witnesses under crossjexamination.10
This statute merely reheves the party who sought the tests from the burden of having to summon the person who performed the tests to testify at the trial; however, the statute does not prohibit the opponent of the evidence from requiring the individual to testify under cross-examination. Because the authority of the trial court to order additional testing is not restricted, we do not find that the language of La.R.S. 9:397.3 impermissi-bly intrudes on the authority of the judiciary under Louisiana’s constitutional scheme. State ex rel. Handler v. Stanford, 590 So.2d 748, 751 (La.App. 3d Cir.1991), writ denied, 592 So.2d 1300 (La.1992).
IV.
Mr. Ashy also contends that the trial court committed legal error in denying defendant’s proffer of evidence, and by failing to require plaintiff and intervenor to prove their case by a preponderance of the evidence.
At the trial of this matter, Dr. Osborne testified that both the child and Mr. Ashy possessed an A30 B53 antigen combination which is rarely found in Caucasians and is more commonly found in members of the Black population. Counsel for defendant sought to introduce evidence of the Milwaukee HLA Tables for black males, thereby allowing for the possibility that a black male could be the father of Ms. Garrett’s child. Counsel for Ms. Garrett objected to the introduction of this information on the grounds of relevancy as there had been no evidence to support the possibility that Ms. Garrett had engaged in intercourse with a black male. The trial judge sustained the objection, but allowed the “Milwaukee Tables” to be proffered into evidence.
The question of “[wjhether evidence is relevant is within the discretion of the trial judge, and his ruling will not be disturbed on appeal in the absence of a clear abuse of his discretion.” Belle Pass Terminal, Inc. v. Jolin, Inc., 92-1544, (La.App. 1st Cir. 3/11/94), 634 So.2d 466, 476-77, writ denied, 94-0906 (La. 6/17/94), 638 So.2d 1094.
In sustaining the objection, the trial judge ruled:
_[nThere is absolutely no evidence, there is not one eintilla [sic] of evidence in this matter that anybody — that at any time during the proximate time of conception that this woman had any relationships with any black men. The black — the alleged possibility of a black father is a bogus issue. I don’t believe it has any evidentia-ry basis either from the testimony of the prosecuting witness or the doctor, ...
Upon review, we cannot say that the trial judge abused his discretion in sustaining the objection.
Defendant also alleges that the trial court committed manifest error by failing to require the plaintiff and intervenor in this matter to prove their case by a preponderance of the evidence.
Ashy argues that the plaintiffs failed to meet this burden because there was no credible evidence to support the trial court’s finding that Ashy had access to Ms. Garrett at the time of conception.
We disagree. There was testimony that Ms. Garrett and Mr. Ashy had sexual intercourse without any form of birth control in the late evening of April 4, 1988. There was expert testimony to the effect that Mr. Ashy’s sperm were viable enough for fertilization to take place on April 6, 1988.
The trial judge obviously concluded from the testimony of Ms. Garrett, Mr. Ashy, and the various experts, that conception did occur at a time when Mr. Ashy had access to Ms. Garrett. We cannot say that the trial judge was clearly wrong or manifestly erroneous in making this determination.
V.
Mr. Ashy’s final argument is that the trial court abused its discretion by making support payment retroactive.
*27 Counsel for Mr. Ashy argues that throughout the trial, his client steadfastly asserted that he did not believe himself to be the father of Ms. Garrett’s child, and that this was obviously Mr. Ashy’s good faith belief.
La.R.S. 9:399 states:
A judgment for child support rendered against a defendant who has acknowledged paternity after a | ^paternity suit has been filed or has been adjudged in a suit to establish paternity to be the parent of the child for whom support is ordered shall be effective from the date on which the paternity suit was filed. In the event the court finds good cause for not making the award retroactive to the date of the filing of the paternity suit, the court may make the award retroactive to a date subsequent to the filing of the paternity suit, but in no event shall the award be fixed later than the date of the rendition of the paternity judgment. Any support of any kind provided by the judgment debtor from the date the petition for support is filed to the date the support order is issued, to or on behalf of the person for whom support is ordered, may be credited to the judgment debtor against the amount of the judgment.
While the trial judge clearly has the discretion to make an award of child support retroactive only to a date subsequent to the filing of the paternity suit, we concur with our brethren on the second circuit who stated:
[T]he general rule is that a child support award will be retroactive to the date the suit was filed, and the exception occurs when the court finds good cause for doing otherwise. A district judge is not required to assign reasons as to whether good cause existed for not making a support award retroactive, Cantillo v. Cantillo, 503 So.2d 55 (La.App. 5th Cir.1987), and we hold that the trial court likewise need not assign reasons for making such an award retroactive. Furthermore, the decision on retro-activity is one within the trial court’s discretion.
State v. Smith, 605 So.2d 222, 225 (La.App. 2d Cir.1992).
The trial judge awarded the stipulated child support of $305.23 per month retroactive to the filing date of August of 1990. Inasmuch as it is properly within the trial judge’s discretion to make child support payments retroactive, and in light of the fact that he does not have to assign reasons for doing so, we find no error in the trial court’s decision to make these payments retroactive to the filing date of the petition for child support.
Therefore, for the above and foregoing reasons, the judgment of the trial court is affirmed at defendant-appellant’s costs.
AFFIRMED.