BLEICH, J. (Pro Tempore)
| iThis appeal arises from the Second Judicial District Court for the Parish of Jackson, State of Louisiana, wherein the trial court ordered Lawrence Rogers to submit to DNA testing in connection with Tiffany Thompson’s petition to establish paternity of her minor child. For the following reasons, we affirm the judgment of the trial court.
FACTS
On January 8, 2016, the Jackson Parish District Attorney’s Office filed an action to establish paternity in accordance with La. R.S. 46:236, et seq. It requested Lawrence Rogers submit to blood testing in order to confirm if he is the biological father of Tiffany Thompson’s son, T.A.T., born March 29, 2006. In the supporting paternity affidavit, Thompson averred the following: she told Rogers he was the father of the child; the’ child resembled Rogers; no other man was listed as the father on the child’s birth certificate; and, she had not had sexual intercourse with any man other than Rogers during the time 30 days before or after conception.
On February 26, 2016, the parties came before a Jackson Parish hearing officer. Rogers refused DNA testing and requested a show cause hearing, which immediately followed. During the hearing, Thompson stated that she was working for Rogers and engaging in a sexual relationship with him when she became pregnant. Although Rogers corroborated that Thompson worked for him in 2006, he denied ever having sexual intercourse with her. In support of her claim that T.A.T. resembles Rogers, two recent photographs of the child were entered into evidence without objection. At the conclusion of the hearing, the matter was taken under advisement and | Peach party was given seven days to submit memoranda containing any additional arguments or evidence.
After considering the testimony and supplemental memoranda, the hearing officer issued an order for Rogers to submit to DNA testing on one of two dates in April 2016, In response, Rogers filed a notice of his intention to seek a supervisory writ and emergency stay of the proceeding. The trial court granted Rogers’ request, and this Court declined to consider the writ.[1] Subsequently, the trial court issued a final judgment incorporating the hearing officer’s recommendations and requiring Rogers submit to DNA testing in September 2016. Rogers filed this suspen-sive appeal.
DISCUSSION
In his appeal, Rogers urges a single assignment of error. He argues the trial court erred in finding the state presented sufficient evidence to establish a reasonable possibility of paternity, because it based its decision solely on the uncorroborated testimony of Thompson. Rogers further argues that an order requiring DNA testing is a search and seizure under the Fourth Amendment of the United States Constitution and violates his constitutional right to privacy. Additionally, Rogers argues that since the state failed to produce the only witness mentioned by Thompson who might corroborate her story, he is entitled to a presumption that the witness’s testimony would be adverse to the state. We disagree.
The Uniform Act on Blood Tests to Determine Paternity (La, R.S. 9:396, et seq.) provides that in any civil action in which paternity is a relevant fact, the trial *1239 court may order the mother, child, and alleged father |sto submit to the collection and testing of blood or tissue samples. La. R.S. 9:396(A)(1). When a party to a contested paternity action refuses to voluntarily undergo a blood test, a show cause hearing must be held in which the trial court can determine whether there is sufficient evidence to establish a prima facie case warranting the issuance of a court order for blood testing. In the Interest of the Minor Child, J.M., 590 So.2d 565 (La. 1991); State, Dep’t of Soc. Servs., Office of Family Support v. Williams, 605 So.2d 7 (La. App. 2 Cir. 1992). In the show cause hearing, before an order for blood testing is issued, the moving party must show that there is a reasonable possibility of paternity. In Interest of J.M., supra. If any party refuses to submit to such tests, the trial court may resolve the question of paternity against such party or enforce its order if the rights of others and the interests of justice so require. La. R.S. 9:396(A)(2).
In State v. Williams, supra, a petition filed on behalf of the minor child alleged Williams was the child’s biological father. In his answer, Williams admitted to engaging in sexual intercourse with the mother on two occasions, but denied paternity and refused to voluntarily submit to blood testing. At that show cause hearing, the state presented a friend of the mother who testified she had knowledge of the relationship between Williams and the mother, and witnessed Williams take her on dates and pick her up from work. The trial court ruled the state failed to establish a prima facie case warranting the issuance of an order for blood testing based on the fact that the mother’s husband was listed as the presumptive father on the child’s birth certificate, and the mother admitted to other sexual partners around the time she became pregnant. The state appealed, and the Williams court reversed the trial court, finding the concept of dual paternity allows for La suit against an alleged biological father even if the legal father is already providing support. Further, the state successfully proved a reasonable possibility of paternity based on the testimony; therefore, the trial court’s judgment was vacated, and Williams was ordered to submit to blood testing. Id. at 9.
In State v. Smith, 605 So.2d 222 (La. App. 2 Cir. 1992), a petition to establish paternity was filed. The mother claimed Smith was the father, although Smith denied ever having sexual intercourse with the mother. Nonetheless, the trial court ordered Smith to submit to blood testing. On appeal, Smith argued that an unfavorable inference should result from the state’s failure to call witnesses to substantiate the mother’s claim. The Smith court stated:
We recognize that as a general rule the failure to produce a witness who has special knowledge essential to a party’s cause, when such a witness is available and under a party’s control, raises a presumption that the witness’s testimony would be detrimental to that party’s cause. However, in this case certain individuals to whom [the mother] referred in her testimony did not have knowledge essential to the state’s case. They were not witnesses to the actual sexual relationship between [the mother] and Mr. Smith. Furthermore, the record does not indicate that these individuals were more available to the state than to Mr. Smith, and there is no indication that any of these individuals were under the state’s control. Accordingly, no unfavorable inference attached in this case.
State v. Smith, supra at 225. (Internal citations omitted.)
Here, Rogers argues that in order to prove a reasonable possibility of paternity, the state must have some corroborating evidence beyond Thompson’s claim that he *1240 is the father. Thus, we are called to determine if a mother’s allegations of a sexual relationship, without some corroboration, can establish a reasonable possibility of paternity.
I ^During the show cause hearing, Thompson testified that she worked for Rogers on and off again at the Church’s Chicken in Grambling, Louisiana, beginning around 2002 and ending after she became pregnant.' She testified the relationship did not become sexual until 2005, and it lasted about a year. She explained Rogers would make her work schedule and would schedule her off on certain days. On those days, he would come to her apartment where she lived alone with her other child, then two years old.
Thompson. also testified she kept ■ the sexual relationship a secret, because Rogers was married and also her employer. Although her family asked in the past, Thompson stated she never told them who the child’s father was. On cross-examination, Thompson admitted that she dated a police officer, but clarified she was not having a sexual relationship with anyone but Rogers when she became pregnant.[2] When asked if she ever told anyone else Rogers was the father, Thompson stated that about five years after T.A.T, was born, while showing photos of her children, she told a woman named Barbara that' Rogers was the father. Thompson stated Barbara worked at Rogers’ convenience store adjacent to Church’s Chicken, but she did not know Barbara’s last name or if she still worked for Rogers.
Thompson also .testified she told. Rogers in his office at Church’s Chicken that she was pregnant with his child. After he brushed her off, Thompson stated she quit working for him. She also testified that after the birth of her child she attempted to establish a relationship between T.A.T. and Rogers, but gave no further details, Thompson stated she now seeks to establish paternity, .because T.A.T. is asking questions about his father.'
|flRogers testified that Thompson worked for him for three years, including 2005, but denied ever having sexual intercourse With her. He testified to having contact with Thompson a couple of times after she discontinued her employment with him, but stated she never told him he was T.A.T.’s father. Rogers testified as following concerning why he refuses to voluntarily submit to DNA testing:
Q: Mr. Rogers, if you’re so certain that you have never had sex with Ms. Thompson, why won’t you just agree to a DNA test?
A: Because I’ll be agreeing to it that I cheated on my wife. I mean, if I start doing that I got a lady in my place of business now, she’s pregnant. She might want me to do a DNA test.
Q: But if you’re not the father, and the DNA tést comes back negative. How does that impact your marriage?
A: Because if that when he take DNA tests it just assumes that I had sex with her. Okay. If everyone is wanting me to take DNA , tests that’s assuming that they are accusing me of haying sex with them.
Rogers maintains Barbara should have been called as a witness to corroborate Thompson’s testimony that, she told her T.A.T.’s father was Rogers. Further, Rogers argues since the state failed to produce Barbara as a witness, he- is entitled to a presumption that, her testimony would be adverse to the state. In State v. Smith, supra, an analogous argument was made by the alleged father, Smith. In that matter, Smith, like Rogers, denied ever having *1241 sexual intercourse with, the mother. In Smith, the state presented only one witness to corroborate the mother’s accusation, and on appeal, the Smith court found that testimony “added little because the [witness] was unaware that [the mother] was seeing Mr. Smith until after [the mother] became pregnant.”
17Here, Barbara’s testimony is clearly irrelevant to prove sexual intercourse occurred between Rogers and Thompson, because there was no assertion by either Rogers or Thompson that Barbara had any knowledge of the relationship. Further, there is no indication that Barbara or any other person possessed knowledge essential to the state’s case, witnessed the actual sexual relationship between Rogers and Thompson, or was any more available to the state than to Rogers. Accordingly, Rogers is not entitled to a presumption against the state based on the fact it supplied no witnesses to corroborate Thompson’s claim.
Moreover, Thompson’s testimony offers a plausible explanation as to why no such witnesses are available. The relationship was kept secret. Rogers denies Thompson’s account of the events and argues the order for DNA testing—the only available means of potentially solving this controversy—violates his constitutional rights. The reasoning offered by Rogers in defense of his right to privacy is far less important than the state’s compelling interest in caring for children and establishing paternity. This argument completely lacks merit considering the Louisiana Supreme Court has already conclusively resolved the question of whether or not the taking of a blood sample pursuant to La. R.S. 9:363 et seq. is a justified invasion of privacy or an unreasonable search and seizure. See In Interest of J.M., supra. Furthermore, Rogers was afforded a show cause hearing in accordance with due process. Id. Additionally, Rogers argues that submitting to DNA testing in response to Thompson’s claim might result in other women accusing him of being the father of their children and requesting DNA tests. Obviously this self-serving assertion is contrary to the state’s interest in caring for children and establishing paternity.
|RThe record establishes that: (1) no father was listed on the birth certificate for T.A.T.; (2) Thompson testified she engaged in a sexual relationship with Rogers regularly for about a year around the time she became pregnant with T.A.T.; (3) Thompson kept her sexual relationship with Rogers a secret because, not only was he married, but he was also her employer; (4) Thompson testified that T.A.T. looks like Rogers, and supplied photos as evidence; (5) Rogers admitted that Thompson worked for him around the time she became pregnant; (6) Rogers denies any kind of sexual relationship with Thompson; and, (7) Rogers denies Thompson ever told him she was pregnant with his child.
After reviewing the record and based on the reasons set forth herein, trial court was not manifestly erroneous in ordering Rogers to submit to DNA testing considering it was proven that Rogers was Thompson’s employer, did control her work schedule, and did have some kind of relationship with her around the time she became pregnant. Additionally, considering Rogers is married, it was not unreasonable for the trial court to base its ruling on Thompson’s .testimony that the relationship was kept secret. Thus, Rogers’ assignment of error is without merit.
CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court ordering Lawrence Rogers to submit to the drawing of DNA samples for examination of inherited *1242 characteristics. The costs of this appeal are cast to Lawrence Rogers.
AFFIRMED.

. The writ application, 53,120-JWC, was not considered because it did not contain a judgment signed by the trial court. U.R.C.A. Rule 4-5.

. No other paternity suits have been, filed alleging any other man is T.A.T.’s father.